ANDRE D. JACKSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jackson v. Commissioner
Docket No. 37418-86.
United States Tax Court
T.C. Memo 1988-395; 1988 Tax Ct. Memo LEXIS 416; 55 T.C.M. (CCH) 1705; T.C.M. (RIA) 88395; August 23, 1988. Audrey jaCobs, for the petitioner. Richard Stein, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: This case was assigned to Special Trial Judge Carleton D. Powell pursuant to the provisions of section 7456(d) (redesignated as section 7443A by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755) and Rule 180 et seq. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. *418 OPINION OF THE SPECIAL TRIAL JUDGE POWELL, Special Trial Judge: Respondent determined a deficiency in Andre D. Jackson's (petitioner's) 1985 Federal income tax liability in the amount of $ 19,183, along with the following additions to tax: § 6653(b)(1)
$ 9,592.00 6653(b)(2)
*     6654
1,099.00 6661
1,918.00 The issues for decision are: (1) whether petitioner received unreported income of $ 53,207 in 1985; (2) whether petitioner is subject to self-employment tax; and (3) whether petitioner is liable for additions to tax under sections 6653(b)(1) and (2), [2] 6654 and 6661. No stipulation of facts has been filed. Exhibits that were introduced into evidence are incorporated herein. Petitioner resided in Richmond, Virginia at the time he filed his petition. FINDINGS OF FACT On November 4, 1985, petitioner and Felix Vega (Vega) were under surveillance by Henrico County (Virginia) police officers. Petitioner *419 and Vega were suspected of conducting a drug transaction in a motel room, and were apprehended by police officers shortly after leaving the motel. When searching petitioner's rental car, police officers found and seized 507.8 grams of boric acid and 21.5 grams of cocaine. [3]Henrico County police officer Michael L. Wade testified that the cocaine had a street value of $ 1,200 to $ 1,500. [4]
Police officers also found a red bag containing $ 12,138 in cash and an assortment of papers, including three jewelry appraisals prepared for petitioner by a local jeweler and copies of various checkbooks. Petitioner stated that he owned the red bag, but petitioner did not claim *420 to own the money inside. Petitioner also had in his possession various pieces of jewelry [5] and a call beeper. In November 1985, respondent made a termination assessment against petitioner. Petitioner failed to file a 1985 return, and respondent prepared a return for petitioner on May 15, 1986. Using the bank deposits plus cash expenditures method of reconstructing income, respondent determined that petitioner had $ 53,207 of income in 1985. Respondent's computation is as follows: Item
Amount
Currency
$ 12,138.00
Cocaine
2,000.00
Personal living expense
10,293.00
Jewelry
14,000.00
Furniture
624.00
1980 BMW [6]
4,000.00
1973 BMW
2,500.00
Deposits-Sovran Bank
7,652.00
Total income
$ 53,207.00
Respondent's computation *421 was based on petitioner's bank records, the purchase of items respondent determined to have been made by petitioner in 1985 (per above) and, for estimating petitioner's personal living expenses, a figure, adjusted for inflation, provided by the Bureau of Labor Statistics. On June 13, 1986, respondent issued a statutory notice of deficiency for petitioner's 1985 taxable year, and petitioner filed a timely petition with this Court. OPINION Petitioner does no contest that he earned income during 1985, nor does he argue that respondent's use of the bank deposits plus cash expenditures method is erroneous. He does, however, contend that his income was much less than that determined by respondent and that none of his income resulted from the sale of cocaine. Rather, petitioner maintains that during 1985 he earned income from selling hard-shelled crabs and taking photographs. [7]
Unreported Income
Section 6001 requires all taxpayers to maintain sufficient records to determine their correct tax liabilities. Petitioner admittedly failed to maintain books or records of any kind. Absent adequate *422 books and records, or even when the taxpayer keeps books and records which support his return as filed, respondent may determine the existence and amount of a taxpayer's income by using any method that clearly reflects income. Sec. 446(b); . The bank deposits plus cash expenditure method is one such accepted method. , cert. denied ; , affg. in part a Memorandum Opinion of this Court. Respondent's determinations are presumed correct, and petitioner bears the burden of proving that such determinations are erroneous. ; Rule 142(a). Furthermore, an error in part of the computation will not invalidate the method of reconstructing income employed by respondent. See ; . Much of petitioner's case rests on his testimony that we found evasive, equivocal and self-serving. *423 [8] He failed to present any witnesses, such as family members or friends, to corroborate his testimony. The failure of a party to call such available witnesses that purportedly have knowledge about relevant facts provides sufficient basis to infer that the testimony of such witnesses would not have been favorable to the party. , affd. . We, therefore, are left in large part with only petitioner's uncorroborated, self-serving testimony, which this Court need not accept. See , affg. a Memorandum Opinion of this Court, cert. denied . When apprehended on November 4, 1985, police officers found $ 12,138 and cocaine in a car rented by petitioner. At that time petitioner maintained *424 that neither the money nor the cocaine belonged to him. However, petitioner later testified at trial that the money was part of a $ 15,000 loan from a friend that he received for an alleged "crab" business. We are not persuaded by either of petitioner's inconsistent statements regarding the $ 12,138, and find that respondent properly included this amount in petitioner's 1985 income. Similarly, as petitioner has not presented a credible explanation as to the source of the cocaine, we find that it also belonged to him. In reaching our conclusion we considered that petitioner was apprehended by police with cocaine in his possession. Although the criminal charge subsequently brought against petitioner was not prosecuted, we find that respondent presented evidence to attribute the cocaine to petitioner. However, based on police officer Wade's testimony, we find its value was $ 1,350 rather than $ 2,000 as determined by respondent. Respondent determined petitioner's personal living expenses of $ 14,000 by taking the highest of three budget figures provided by the Bureau of Labor Statistics and adjusting it for inflation. Petitioner argues that respondent erred by using the highest *425 figure, and claims that his 1985 living expenses only amounted to $ 4,000 to $ 5,000 because he "lived off [his] mother and ladies." Use of Bureau of Labor Statistics have been upheld in this Court. See ; . By his own admission petitioner purchased a BMW, gold jewelry and furniture in 1985. Given petitioner's purchases and apparent life-style, we find respondent's determination is more than justified. Respondent also determined that petitioner spent $ 14,000 for jewelry in 1985. This figure was based on appraisals found in petitioner's possession on November 4, 1985, adjusted for jewelry receipts showing purchases in years other than 1985. Petitioner, however maintains that his 1985 jewelry purchases amounted to approximately $ 4,000. [9] Neither the record nor the partially illegible receipts presented afford us much guidance in this area. Based on the evidence presented, petitioner has not shown any significant error in respondent's calculation. Accordingly, we find that petitioner purchased $ 14,000 of jewelry in 1985. *426 Petitioner does not contest the expenditures determined by respondent for furniture or his 1980 BMW. Petitioner does, however, maintain that Elnora Williams, with whom he was allegedly living in 1985, purchased the 1973 BMW with her own money. The car was registered in Ms. Williams' name. Petitioner, however went to the car dealer to buy the car. The car itself bore the license plate "AJNBA," which we assume represents petitioner's initials and the abbreviation for "National Basketball Association." [10] Furthermore, petitioner failed to call Ms. Williams to corroborate his testimony. After considering these facts, we find that petitioner purchased the 1973 BMW. Lastly, we consider petitioner's contention that respondent erred in attributing to him bank deposits totaling $ 7,652. Petitioner does not contest that such deposits were actually made to his account. Rather, petitioner contends that his family and Ms. Williams made deposits to his account so petitioner could then write checks for them. Even if we were to accept petitioner's testimony (which we do not), [11] we would be unable to adjust respondent's *427 figure because petitioner has failed to identify the deposits allegedly made by Ms. Williams and his family. Respondent's figure is sustained. Self-Employment Tax
Petitioner has not contested respondent's determination that he is subject to self-employment tax under section 1401. Having found that petitioner earned income in the amount of $ 52,557, we find petitioner subject to self-employment tax on this amount. Additions to Tax
Respondent determined that petitioner is liable for additions to tax under section 6653(b) for fraudulently understating his income in 1985. Section 6653(b)(1) provided that if any part of the underpayment is due to fraud, there will be an addition to tax equal to 50 percent of the entire underpayment. The addition imposed by section 6653(b)(2), however, applies only to the portion of the underpayment that is attributable to fraud. Fraud is the intentional wrongdoing by the taxpayer with the specific purpose of evading a tax known *428 or believed to be owing. , cert. denied . The existence of fraud is a question of fact to be determined upon consideration of the entire record. , affd. without published opinion . Since direct evidence of fraud is seldom available, the taxpayer's conduct and surrounding circumstances may be used to prove fraudulent intent. . Respondent must prove, by clear and convincing evidence, that some part of the underpayment of tax is due to fraud. Sec. 7454(a); Rule 142(b). Although petitioner did not file a 1985 Federal income tax return, there is some question as to why he failed to do so. Petitioner testified that he believed that he was not required to file a return because respondent had made a termination assessment. Although we are not completely swayed by this testimony, we find it sufficiently plausible to raise a doubt as to whether petitioner knew that he was still required to file a return *429 after a termination assessment was made. This is especially true when we consider petitioner's intelligence, [12] education and tax expertise. See ; . Furthermore, respondent did little to assuage our doubt. Thus, even though petitioner's conduct bears some indicia or fraud, we find that respondent has failed to prove, by clear and convincing evidence, that petitioner harbored the intent to evade tax. Petitioner, therefore, is not liable for the section 6653(b) additions to tax. In the alternative, respondent seeks to impose additions to tax under sections 6651(a) and 6653(a). Section 6651(a) imposes an addition to tax for failure to file a timely return, unless it is shown that such failure is due to reasonable cause and not willful neglect. Section 6653(a) provides for an addition to tax if any part of the underpayment of tax is due to negligence or intentional disregard of rules and regulations. Respondent first asserted these additions in his answer, and thus bears the *430 burden of proof. Rule 142(a). However, unlike the higher burden respondent must meet to prove fraud, respondent need only prove the section 6651(a) and 6653(a) additions by a preponderance of the evidence. Although we found petitioner not subject to the section 6653(a) fraud additions, we find that petitioner's conduct, while not showing a specific intent to evade tax, evidenced willful neglect and negligence so as to warrant additions to tax under sections 6651(a) [13] and 6653(a). Respondent's determinations, therefore, are sustained. Respondent also determined that petitioner is liable for additions to tax under section 6654 (failure to pay estimated income tax) and section 6661 (substantial understatement of income tax liability). Section 6654 imposes an addition to tax where there is an underpayment of estimated tax, subject to exceptions that are inapplicable *431 here. This section contains no provision relating to reasonable cause and lack of willful neglect. As petitioner failed to make any estimated tax payments in 1985, respondent's determination is sustained. Section 6661 provides for an addition to tax for a substantial understatement of income tax liability. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return, or $ 5,000. Sec. 6661(b)(1)(A). Applying this standard, it is clear that petitioner's understatement of tax was substantial. Accordingly, we sustain respondent's determination. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, and as in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise provided. ↩
*. 50 percent of the interest on $ 19,183 ↩
2. If we find petitioner not subject to additions to tax under sections 6653(b)(1) and (2), respondent seeks to impose additions to tax under sections 6651(a) and 6653(a). ↩
3. Petitioner was arrested and charged in Virginia with possession, with the intent to distribute, cocaine. His case was not prosecuted, apparently because the police officer who actually found the cocaine as convicted of bribery in another case. In 1987, petitioner was convicted of possession of cocaine. Petitioner is currently appealing his conviction. ↩
4. Sergeant Ronald D. Reed of the Richmond Police narcotics division testified that 28 grams of cocaine had a street value in Richmond of$ 1,800 to $ 2,000. ↩
5. These items of jewelry included: (1) one Krugerrand with gold chain, (2) one gold ring with a Mercedes Benz sign, (3) one gold ring with eight stones, one gold ring with Andre in small diamonds,(4) one gold bull with two red stones, (5) a gold chain and (6) one gold chain with six small stones and a nugget. ↩
6. Petitioner purchased the car in 1985 with a $ 4,000 down payment and financed the balance. ↩
7. Petitioner also stated that he was "hustling" in 1985, but did not elaborate. ↩
8. Petitioner maintained that he suffered a lack of memory as a result of some car accidents he suffered in 1983. Petitioner later testified that he was involved in another car accident in 1986 or 1987, again attributing to his loss of memory. We are reluctant to accept petitioner's explanations. ↩
9. Petitioner's counsel stated that "an exact tape" of petitioner's jewelry purchases would be provided to the Court. This was never provided. ↩
10. Petitioner considers himself to be a good basketball player. ↩
11. We would be asked to believe that various people deposited funds in a checking account in the name of a self-styled illiterate that he could withdraw at will. We decline to engage in such fantasy. ↩
12. Petitioner stated that he is unable to read well and cannot write. ↩
13. Petitioner also testified that he did not file a return because he thought "the lady" (presumably Ms. Williams) would file a return for him. The duty to file a tax return is nondelegable. See . Petitioner's explanation, therefore, is meritless. ↩